# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| JAWBONE INNOVATIONS, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No. 6:21-CV-00985-ADA |

## DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

▌

1778043

Pursuant to 28 U.S.C. § 1404(a), Defendant Google LLC ("Google") respectfully requests that the Court transfer this action, filed by Plaintiff Jawbone Innovations, LLC ("JI"), in the United States District Court for the Western District of Texas (WDTX), to the United States District Court for the Northern District of California (NDCA).

## I.  INTRODUCTION

This patent infringement dispute involves witnesses and evidence primarily located in NDCA, **not** WDTX.  Key Google personnel with knowledge about the technology, financials, and marketing of the accused products work in NDCA.  The important documents and prototypes are also maintained at Google's headquarters in NDCA.  At least fifteen third-party witnesses—including the inventors of the patents-in-suit, persons knowledgeable about the prosecution and abandonment of the patents-in-suit, and third-party companies that provide algorithms used in the accused products—are also located in NDCA.  In fact, to Google's knowledge, there is not a single Google employee or third party in WDTX who is likely to be a trial witness.  Nor does JI have a legitimate reason to file this action in WDTX.  JI is the alter ego of a Maryland entity and only acquired the patents shortly before filing this lawsuit.  Where, as here, "the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff," the case should be transferred.  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

## II.  FACTUAL BACKGROUND

JI accuses Google of infringing nine patents.[1]  ECF No. 23 (Am. Compl.).  According to

---

[1] The asserted patents include U.S. Patent Nos. 8,019,091 (the "'091 Patent"), 7,246,058 (the "'058 Patent"), 8,280,072 (the "'072 Patent), 8,321,213 (the "'213 Patent"), 8,326,611 (the "'611 Patent"), 10,779,080 (the "'080 Patent"), 11,122,357 (the "'357 Patent"), 8,467,543 (the "'543 Patent"), and 8,503,691 (the "'691 Patent").

JI's first amended complaint ("Complaint"), these patents generally describe acoustic noise suppression and voice activity detection. *Id.* JI accuses Google earbuds (*e.g.*, Pixel Buds), smartphones (*e.g.*, Pixel phones), smart speakers and displays (*e.g.*, Home devices), and software with noise suppression functionality, of infringing the patents-in-suit (the "Accused Products"). *Id.*; *see also* Decl. of Rylee Kercher Olm in Supp. of Mot. to Transfer ("Olm Decl."), Ex. 1.

### A.     Google's witnesses and documents are in NDCA.

Google's Mountain View, California headquarters and most of its U.S. workforce are in NDCA.  *See* Decl. of Michelle True in Supp. of Mot. to Transfer ("True Decl.") ¶ 3.[2]  Moreover, the Google witnesses with relevant technical knowledge about the Accused Products are in NDCA.  *Id.* ¶¶ 6-20.  Specifically, Google identified six key technical witnesses who lead the Hearables, Pixel Buds Product Design, Pixel Audio Systems, Acoustics for Pixel, Nest for Acoustics, and Front-End Modeling teams.  *Id.* ¶¶ 7, 8, 12, 13, 17, 20.  These teams are primarily located in NDCA, and none of their members are in Texas.  *Id*.  Google also identified six key financial and marketing witnesses, all of whom are in NDCA.  *Id.* ¶¶ 10, 15, 19.

Additionally, JI relies in its Complaint and Infringement Contentions on various articles authored by Google employees.  While Google disputes the relevance or admissibility of these articles, nine of their authors are current Google employees in NDCA; none are in Texas.  *Id.* ¶¶ 21-23.  This list includes the sole author of "Meet the New Google Pixel Buds," which JI uses to support its contention that accused Pixel Buds infringe the '091 and '058 Patents.  *See, e.g.*, Am. Compl. ¶ 58; True Decl. ¶ 21.  It also includes the first author of "Neural Network Adaptive Beamforming for Robust Multichannel Speech Recognition," which JI uses to support its

---

[2] Although Google has an office in Austin, Texas, it houses only ▮▮▮ of Google's U.S. employees.  *Id.* ¶ 4.

allegation that the Pixel Buds, Nest, and Home products infringe the '213, '611, '357, and '091 Patents. *See, e.g.*, Am. Compl. ¶¶ 41, 59, 102, 103, 116, 117; True Decl. ¶ 22. Additionally, eight authors of "Acoustic Modeling for Google Home"—which JI relies on to support its claim that the accused Nest and Home products infringe the '213, '611, '058, '080, '691, '357 and '072 Patents—are in NDCA. *See, e.g.*, Am. Compl. ¶¶ 102, 116; True Decl. ¶ 23. Neither party has identified *any* Google employees in Texas who are likely to testify on technical, financial, or marketing aspects of the Accused Products. True Decl. ¶ 24.

As with the 20 identified Google witnesses, relevant technical, financial, and marketing documents for the Accused Products are also created and maintained by employees in and around NDCA. *Id.* ¶ 25. None of these documents are created or maintained in WDTX. *Id.* ¶ 26. Google's technical witnesses also develop and test early- and late-stage prototypes of the Accused Products in Google labs in NDCA, not WDTX. *Id.* ¶¶ 7, 8, 12, 13, 17. Additionally, Google's technical witnesses also possess relevant hardcopy documents, such as development and research notebooks, in their NDCA offices. *Id.* ¶¶ 8, 12, 20.

> **B.    JI's manufactured connections to WDTX are minimal.**

JI is a non-practicing entity with its alleged principal place of business in Waco, Texas. *See* Am. Compl. ¶ 1. JI was formed in February 2021 and was assigned the patents-in-suit several months thereafter. Olm Decl., Exs. 2, 3. No JI employee was involved in the development of the patented technology. *See* Am. Compl., Exs. A-I. Thus, there is no indication that there is any relevant evidence located in WDTX.

JI's only connection to Texas was manufactured for the purpose of venue selection. JI appears to be an alter ego of YE Ventures LLC, a *Maryland* entity with its principal office at 301 South Fremont Avenue in Baltimore. Olm Decl., Exs. 2 & 4. York Eggleston and Carroll James Harris formed YE Ventures LLC, and Keith Machen is its current registered agent. *Id.*, Exs. 2, 3,

4, 44, & 45.  Messrs. Eggleston and Machen are listed as the managers for several other non-practicing entities in Texas—Granite Vehicle Ventures LLC, Marble VOIP Partners LLC, Cobalt Navigation Ventures LLC, and Graphite Charging Company LLC—all of which list the organizer address as 301 South Fremont Avenue in Baltimore, Maryland.  *Id.*, Ex. 5.  JI's certificate of formation similarly lists York Eggleston as its manager at the same address in Baltimore.  *Id.,* Ex. 2.  Mr. Eggleston and YE Ventures thus appear to control JI's operations from Maryland.  JI does not appear to have *any* employees in WDTX, and notably, JI's hiring is managed by Andrew Cohen, who is President of YE Ventures and located in New York.  *Id*., Ex. 6.

      **C.**      **Numerous third-party witnesses are in NDCA.**

            **1.**      **Third parties knowledgeable about the invention and prosecution of the patents-in-suit reside in NDCA.**

Whereas a majority of the third parties involved in the alleged invention, development, and prosecution of the patents-in-suit are in NDCA, ***not a single one*** is in WDTX.  The technology of the patents-in-suit was developed by AliphCom, Inc.—a now-liquidated California company formerly headquartered in San Francisco.  Am. Compl. at ¶ 19; Olm Decl., Ex. 39.  The CEO and founder of AliphCom—Hosain Rahman—remains in San Francisco.  Olm Decl., Ex. 7. Rahman represented AliphCom in several financial transactions involving the asserted patents.  *Id.*, Exs. 8 at 21 & 9 at 13.  ***Four*** of the six inventors of the patents-in-suit currently also reside in NDCA—Eric F. Breitfeller, Nicolas J. Petit, Zhinian (Eric) Jing, and Andrew E. Einaudi.  Am. Compl., Exs. A–I; Olm Decl., Exs. 10–13.  JI contends that Mr. Breitfeller informed Google of the patents-in-suit when he was a Google employee.  Am. Compl. ¶ 27.  The other two inventors reside in Northfield, Minnesota and London. Olm Decl., Exs. 14 & 15.  Notably, the majority of the patents-in-suit were developed while these inventors resided in NDCA.  Am. Compl., Exs.

4

A–I. And Scott Kokka—the only attorney who prosecuted all nine patents-in-suit—is also located in NDCA. *Id.*, Olm Decl., Exs. 16 & 17. Five other prosecuting attorneys likewise reside or work in NDCA, not WDTX—Mr. Trueman Denny, Mr. Howard Yuan, Ms. Chien-Ju (Alice) Chuang, Ms. Barbara Courtney, and Mr. Rick Gregory. *Id.*, Exs. 18–20, 34–36, 38.

### 2. Third parties with relevant knowledge about the Accused Products reside in NDCA.

The accused Pixel Buds and Pixel phones utilize third-party algorithms from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. True Decl. ¶¶ 9, 14. ▮▮▮▮▮▮▮▮ have offices in NDCA, and ▮▮▮▮ is headquartered in ▮▮▮▮▮▮. Olm Decl., Exs. 21–23, 37.[3] Google's primary points of contact for ▮▮▮▮▮▮ are also in California. True Decl. ¶ 14. Additionally, three former Google employees who authored the "Acoustic Modeling for Google Home" paper currently reside in NDCA, Olm Decl., Exs. 24–26, and none of the other authors reside in Texas, *id.*, Exs. 40-41; True Decl. ¶ 23.

### III. LEGAL STANDARD

To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (quoting 28 U.S.C. § 1404(a)). If so, the court weighs four private and four public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (quoting *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004)). The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *See In re Nintendo Co.*, 589 F.3d at 1197. The determination is not whether the "transferee forum is *far* more convenient," *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014), nor does a plaintiff's choice of venue carry any weight, *Volkswagen II*, 545 F.3d at 314 n.10.

## IV. TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS FAVORED

### A. JI could have filed this case in NDCA.

JI could have brought this action in NDCA, where Google is headquartered.

### B. NDCA is "clearly more convenient" than WDTX.

Four of the Fifth Circuit's eight enumerated factors strongly favor transferring this case to NDCA, four are neutral, and *no* factors support litigating in WDTX.

| Factor | More Convenient Venue |
| --- | --- |
| Relative ease of access to sources of proof | NDCA (strongly) |
| Availability of the compulsory process | NDCA (strongly) |
| Cost of attendance for willing witnesses | NDCA (strongly) |
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having localized interests decided at home | NDCA (strongly) |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Avoidance of unnecessary problems of conflict of laws | Neutral |

### C.  The private interest factors strongly favor transfer.

#### 1.  The cost of attendance for willing witnesses heavily favors transfer.

The convenience of witnesses "is probably the single most important factor[.]" *In re Genentech*, 566 F.3d at 1343.  The analysis "must consider" the convenience of third-party witnesses as well as "possible party witnesses." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1445 (2022).  Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.  However, witnesses that reside distant from both forums "will be inconvenienced by extensive travel regardless of the forum and thus 'the 100-mile rule should not be rigidly applied.'" *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-00810-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) (quoting *In re Genentech*, 566 F.3d at 1344)).  Here, the vast majority of key witnesses are in Northern California such that it would be far more convenient for these witnesses to testify in NDCA.

Google's key employees with technical, financial, and marketing knowledge of the Accused Products are all in NDCA.  These include six engineers with essential technical knowledge regarding the Accused Products and six key marketing and financial witnesses.  *See supra* Section II.A; *see also In re Genentech*, 566 F.3d at 1343-44 (defendant need only show potential witnesses have "relevant and material information").  Moreover, JI's Complaint and Infringement Contentions rely on articles authored by nine current Google employees in NDCA. *See supra* section II.A.  Because Mountain View is roughly 1,700 miles away from Waco, travel for these 20 employees will involve air travel, at least one hotel night, multiple days of missed work, and significant expense.  Olm Decl., Ex. 27.  The inconvenience of this forum therefore

favors transfer. *Volkswagen I*, 371 F.3d at 205; *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) ("[D]iscounting the inconvenience to Hulu's witnesses is fundamentally at odds with the purpose of a transfer for convenience of the witnesses."). By contrast, there are no known party witnesses in WDTX.

Transfer is thus appropriate because Google has "identified a significant number of its own employees as potential witnesses who reside in the [NDCA]." *In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2469 (2021); *see also In re Google LLC* ("*In re Google III*"), No. 2021-171, 2021 WL 4592280, at *4 (Fed. Cir. Oct. 6, 2021); *In re Hulu, LLC*, 2021 WL 3278194, at *5 (finding in favor of transfer where an "overwhelming number of potential witnesses from Hulu [were] in or near California compared to the two from SITO in Texas").[4]

### 2. Availability of compulsory process to secure unwilling witnesses strongly favors transfer.

A district court may compel a witness to appear so long as the proceeding takes place within 100 miles of the witness's residence or place of business. Fed. R. Civ. P. 45(c). Thus, WDTX courts cannot compel any of the known third-party witnesses to attend a hearing or trial in this case. Accordingly, this factor "weigh[s] heavily in favor of transfer" as "more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.* ("*In re Apple I*"), 581 F. App'x 886, 889 (Fed. Cir. 2014).

---

[4] The convenience of relevant third-party witnesses in NDCA, identified above in Section II.C., would weigh further in favor of transfer. However, as Google does not currently know whether any are willing witnesses, it has discussed such third-party witnesses in connection with the availability of compulsory process factor, below. *See Super Interconnect Techs. v. Google LLC*, 6:21-cv-259-ADA, Dkt. 49 at 6 (W.D. Tex. Nov. 8, 2021).

Fifteen third-party witnesses with relevant information regarding the suit are in Northern California. *See supra* Section II.C. **First,** four of the six inventors of the patents-in-suit currently reside in NDCA, including Mr. Breitfeller, who JI alleges informed Google of the patents-in-suit. Olm Decl., Exs. 10–13. **Second,** the CEO and founder AliphCom, Hosain Rahman, resides in NDCA. *Id.*, Ex. 7. Mr. Rahman will have relevant and material information about the valuation of the asserted patents as he was personally involved in several transactions involving the asserted patents. *Id.*, Exs. 8 & 9. **Third,** Mr. Kokka—the only attorney who prosecuted all nine asserted patents—and five other prosecuting attorneys reside or work in NDCA. *Id.*, Exs. 16–20, 34–36, 38. **Fourth**, Google licenses ▮▮▮ from three companies that are headquartered in or have offices in California—▮▮▮—and Google's primary contact at ▮▮▮ is in NDCA. Olm Decl., Exs. 21-23. **Fifth**, three former Google employees mentioned in JI's Complaint are currently in NDCA. Olm Decl., Exs. 24–26. These individuals authored an article cited by JI to support its infringement contentions. *See, e.g.*, Am. Compl. In contrast, Google is not aware of *a single* non-party witness in WDTX.

Given this Court's inability to compel these 15 third-party witnesses to testify, this factor weighs substantially in favor of transfer. *See In re Hulu, LLC*, 2021 WL 3278194, at *4 (this factor favors transfer when "movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue").

### 3. Relative ease of access to sources of proof heavily favors transfer.

Under this factor, courts must consider the location of all documents and physical evidence. *See In re Genentech, Inc.*, 566 F.3d at 1345-46. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place

9

where the defendant's documents are kept weighs in favor of transfer to that location." *In re Nintendo*, 589 F.3d at 1199.

The vast majority of the research, design, development, and testing related to the Accused Products occurs in Mountain View, California. True Decl. ¶¶ 6–8, 11–13, 16–17, 20. Thus, the relevant technical electronic documents are primarily created and maintained in Mountain View, where the custodians of those documents are located. *See Id.*, ¶ 25; *see also In re Google LLC* ("*In re Google IV*"), No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (district court erred in not "considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval"). Google employees have also identified potentially relevant hardcopy documents, including development and research notebooks, that are located in Mountain View. True Decl., ¶¶ 8, 12, 20. Google also develops, tests, and stores prototypes of the Accused Products in its Mountain View offices. *Id.* ¶¶ 7–8, 12–13, 17. For example, Google tests prototypes for the accused Pixel Buds and Pixel phones in its Mountain View labs. *Id.* ¶¶ 7–8, 12–13. Google's financial and marketing documents relevant to the Accused Products are also created and maintained by employees located in NDCA. *Id.* ¶¶ 10, 15, 19. By contrast, Google has not identified any relevant documents that are created or maintained in WDTX, nor is Google aware of any relevant prototypes in WDTX. *Id.* ¶¶ ¶¶ 7–8, 12–13, 17, 26.

As the accused infringer, Google will have the bulk of relevant documents. In contrast, JI was formed in 2021 and acquired the patents-in-suit shortly before filing this lawsuit. *See* discussion *supra* Section II.B. To the extent JI possesses any relevant records, these records will likely be stored in Maryland, where JI's alter ego is located. *Id.*

10

Additionally, the many-third party witnesses in NDCA will likely have evidence relevant to the invention and validity of the patents-in-suit, and the alleged infringement of the Accused Products. These witnesses include four of the inventors of the patents-in-suit, the CEO of the company that developed the technology of the patents-in-suit, six attorneys who prosecuted the patents-in-suit, two companies who provide third-party algorithms for the Accused Products, and three former Google employees who authored a paper on which JI relies in its infringement allegations. *See supra* Section II.C.

Because the relevant documents in this case are predominately located in NDCA, the relative ease of access to sources of proof factor weighs strongly in favor of transfer. *10Tales, Inc.*, 2021 WL 2043978, at *2.

### 4. There are no practical problems with transferring this case.

The fourth private interest factor considers any practical problems, with a focus on "considerations of judicial economy and the existence of co-pending litigation." *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018).

First, as to judicial economy, "this Court has previously held that [this] factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021). That is the case here: the identified witnesses are in NDCA and none are in WDTX, as JI only has a recently manufactured presence in WDTX. Moreover, the suit is in its earliest stages[5] such that the Court has not had to expend

---

[5] JI filed its first amended complaint on December 23, 2021, and claim construction briefing and discovery have not started.

11

time analyzing the asserted patents. *See Voxer, Inc. v. Facebook, Inc.*, No. 6:20-cv-00011-ADA, 2020 WL 3416012, at *5 (W.D. Tex. June 22, 2020).

Second, that JI filed another case in WDTX involving common patents-in-suit against Apple does not weigh against transfer.[6] *See In re NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) (rejecting that "the mere co-pendency" of cases "in a particular district automatically tips the balance in the non-movant's favor"); *In re Apple Inc.* ("*In re Apple II*"), No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (where co-pending "suit involves different defendants and different accused products," it is likely to involve "significantly different discovery, evidence, proceedings, and trial" and therefore "any 'incremental gains in keeping [this] case in the [WDTX]' are insufficient 'to justify overriding the inconvenience to the parties and witnesses'") (quoting *In re Samsung*, 2 F.4th at 1380)).

Accordingly, this factor weighs heavily in favor of transfer because there are no practical problems with transferring this case.

### D. The public interest factors also favor transfer.

#### 1. Court congestion is neutral.

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech*, 566 F.3d at 1347. As the "most speculative" factor, however, comparative administrative difficulties should not be given dispositive weight, and thus cannot prevent transfer where, as here, "several relevant factors

---

[6] Apple also intends to move to transfer to NDCA. Olm Decl. ¶ 2. JI also sued Amazon and Samsung in the Eastern District of Texas over the same asserted patents; Amazon has filed a motion to transfer the case to NDCA and Samsung has expressed its intention to do so as well. *Id.* Thus, transferring this case could allow for the consolidation of all four pending cases in the most-convenient district. *See Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 6:13-CV-362, 2014 WL 10748106, at *7 (W.D. Tex. June 11, 2014) (transfer would further judicial economy where related suits were filed in both East and West Texas).

12

weigh in favor of transfer and others are neutral." *Id.*; *see also In re Google II*, 2021 WL 4427899, at *7. Moreover, the "prospective speed with which [a] case might be brought to trial" is not "of particular significance" where the plaintiff, as here, "does not practice the patent and therefore [] is not in need of a quick resolution of [a] case because its position in the market is threatened." *In re WMS Gaming Inc.*, 564 F. App'x 579, 581 (Fed. Cir. 2014)*; see also In re Juniper Networks I, Inc.*, 14 F. 4th 1313, 1322 (Fed. Cir. 2021) (same).

Here, transfer is appropriate because "the [WDTX] and the [NDCA] show no significant differences in caseload or time-to-trial statistics."[7] *In re Apple II*, 2021 WL 5291804, at *4 (quoting *In re Juniper Networks I*, 14 F.4th at 1322). Indeed, this Court has recently recognized that this factor is neutral as to a transfer from WDTX to NDCA where, as here, "neither discovery nor a *Markman* hearing have occurred," such that "transfer at this stage of litigation would not likely create any meaningful delays." *10Tales, Inc.*, 2021 WL 2043978, at *5. This Court should therefore conclude, consistent with *10Tales*, that court congestion does not weigh against transfer from WDTX to NDCA. *See e.g.*, *In re Google II*, 2021 WL 4427899, at *7 ("[S]peculation about what might happen with regard to the speed of adjudication is plainly insufficient to warrant keeping this case in the Texas forum given the striking imbalance favoring transfer based on the other factors."). Furthermore, the Federal Circuit has instructed that it would be "improper to assess the court congestion factor based on the fact" that this Court

---

[7] Here, as in *In re Google II*, "the median time to trial for all judges in the two districts is not dramatically different." 2021 WL 4427899, at *7 n.3. Notably, NDCA appears to currently have fewer patent cases (122) than WDTX (465), and NDCA has more judges to handle those cases than the Waco Division of WDTX. *See* Olm Decl., Exs. 28, 29, 42 & 43. This Court and NDCA have also had similar median times to trial since September 2018 in civil cases generally, *see id.*, Exs. 30 & 31 (867 days in NDCA versus 702 days in this Court), and in patent cases specifically, *see id.* ¶, Exs. 32 & 33 (802 days in NDCA versus 644 days in this Court).

already issued a scheduling order. *In re Juniper I*, 14 F.4th at 1322. This factor is therefore neutral.

### 2. NDCA has a strong local interest in this dispute.

The "local interest in having localized interests decided at home weighs heavily in favor of the [NDCA]," where events at issue in the case occurred. *Volkswagen I*, 371 F.3d at 206 (internal citation omitted). While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, connections between the transferee venue and the events giving rise to a suit favor transfer. *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011). In a patent infringement suit, connections between the transferee venue and the events giving rise to the suit include the location of inventors and patent prosecution counsel and where the products were designed and developed. *See id*; *see also In re Samsung*, 2 F.4th at 1380.

Here, all these considerations favor NDCA as the venue with superior ties to the lawsuit. First, most witnesses—including inventors and patent prosecution counsel—are in NDCA, none are in WDTX. *See supra* Sections II.A. and II.C. Second, and most importantly, Google employees "researched, designed and developed" the relevant technical aspects of the Accused Products in NDCA, *In re Samsung*, 2 F.4th at 1380, and it is those employees' work and reputation that has been called into question, *In re Acer Am. Corp.*, 626 F.3d at 1256 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.") (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

In contrast to the significant connection between this litigation and NDCA, there is no meaningful connection to WDTX. The key witnesses are not in WDTX, and Google's presence in Austin is not materially relevant to the Accused Products. *In re Google II*, 2021 WL 4427899

14

1778043

at *6 (concluding that local interest factor should be weighted "strongly in favor of transfer" when "accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas").

JI was not involved in the invention of the asserted patents; rather, the patents were developed by a company and inventors in NDCA. JI therefore is unlikely to have key witnesses or any witnesses with physical evidence in WDTX. *See supra* at Section II.C. Moreover, JI's connection to WDTX appears to be manufactured for purposes of litigation. Indeed, its connection to Texas as a whole "appears to be . . . ephemeral, and an artifact of litigation," which weighs in favor of transfer. *In re Zimmer Holdings Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *see supra* Section II.C. Moreover, the Supreme Court has explicitly condemned venue manipulation of this kind. *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) ("If the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box [or] a bare office. . . —the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination."); *see also In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (applying holding to § 1404(a) analysis).

Therefore, the local interest factor "strongly favors transfer." *See Datascape Ltd. v. Dell Techs., Inc.*, No. 6:19-CV-00129-ADA, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019).

### 3. The remaining public interest factors are neutral.

The factors concerning familiarity of the forum with the law that will govern the case and conflicts of law or the need to apply foreign law are neutral.

## V. CONCLUSION

This suit has no meaningful connection to the Waco Division of WDTX. Google respectfully requests an order transferring this case to NDCA.

15

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
|  |  | KEKER, VAN NEST & PETERS LLP |
| Dated: April 29, 2022 | By: | /s/ *Christa M. Anderson* |

Christa M. Anderson (admitted pro hac vice)
canderson@keker.com
Reid Mullen (admitted pro hac vice)
rmullen@keker.com
Erin Meyer (admitted pro hac vice)
emeyer@keker.com
David J. Rosen (admitted pro hac vice)
drosen@keker.com
Connie P. Sung (admitted pro hac vice)
csung@keker.com
Luis Gabriel Hoyos (admitted pro hac vice)
lhoyos@keker.com
Rylee Kercher Olm (admitted pro hac vice)
rolm@keker.com
Erica Miranda (admitted pro hac vice)
emiranda@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Michael E. Jones
mikejones@potterminton.com
Texas Bar No. 10929400
Patrick C. Clutter, IV
Texas Bar No. 24036374
patrickclutter@potterminton.com
POTTER MINTON
110 North College
Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

Attorneys for Defendant
GOOGLE LLC

1778043